UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLAND DIVISION

TAMARA DEAN, on Behalf of Herself and
All Others Similarly Situated,

Plaintiff,

vs.

PETE AND GERRY'S ORGANICS, LLC,

Defendant.

CLASS ACTION COMPLAINT

DEMAND FOR JURY TRIAL

Plaintiff, Tamara Dean ("Plaintiff"), by and through her attorneys, brings this action on behalf of herself and all others similarly situated against Defendant ("Defendant" or "Pete and Gerry's Organics"). Plaintiff hereby alleges, on information and belief, except for information based on personal knowledge, which allegations are likely to have evidentiary support after further investigation and discovery, as follows:

FACTUAL ALLEGATIONS

1. Defendant Pete and Gerry's Organics, the distributor of Nellie's Free Range Eggs (the "Eggs"), falsely markets them as being "Free Range" eggs from hens raised in humane living conditions.

2. In fact, while boasting about the living conditions of Nellies' hens, Defendant goes as far as to draw a contrast between its farms with other farms with purportedly less humane conditions and states "Most hens don't have it as good as

1

Nellie's. 9 out of 10 hens in the U.S. are kept in tiny cages at giant egg factories housing millions of birds. Sadly, even "cage-free" is now being used to describe hens that are crowded into large, stacked cages on factory farms, who never see the sun. Nellie's small family farms are all Certified Human Free-Range. Our hens can peck, perch, and play on plenty of green grass."











3. This statement and this imagery are reinforced by Defendants' further statements that the Eggs come from "Outdoor Forage" hens.

4. These representations led Plaintiff and other reasonable consumers to understand that Defendant's hens had space to move around both indoors and outdoors, that the hens in fact spent time outdoors, and that Defendant's hens have better lives than other hens because they have more access to the outdoors.

5. Unfortunately for consumers, none of this is accurate. Defendant's portrait of a its hens' "Free Range" lifestyle is far from the reality. Defendant's hens are crammed into sheds up to 20,000 at a time, preventing them from extending their wings, foraging or making their way to the outdoor space as Defendant advertises so prominently.



6. These conditions are very different from the impression reasonable consumers gain from Defendant's representations and photographs on the Eggs' packaging.

7. Media on Defendant's own website provides powerful evidence of how consumers interpret its claim that the Eggs are "free range." In a video found on

the Nellie's YouTube Channel titled "Nellie's Free Range Eggs – Understanding Eggs," Nellie's purports to provide a "Helpful explanation of some of the terms used on egg cartons and their validity from Nellie's Free Range Eggs." (See https://www.youtube.com/watch?v=b62wACS0ln0 from March 2021).

8. The video discusses the difference between specialized egg labels: "all natural farm fresh," "cage free," and "free range." The narrator describes a "cage free" hen as "still living inside a space much like a large, overcrowded warehouse"—deeming it "still a pretty grim existence" because "she'll never get to see the outdoors or have the environment she needs to act like a normal hen." For comparison, the video includes an image of a cage free farm. In contrast, the video argues, the "hen that made [a Nellie's egg]? Well, she's one happy hen. Our free-range hens get to live their lives like real hens, with access to pasture everyday in good weather. Our hens can spread their wings, forage in the fields, or scratch in the dirt." This narration is accompanied with a series of images like the one below purportedly depicting Nellie's farms:



9. Notably, the interior of a Nellie's henhouse is never shown in the video. The video ends with a comparison of "all natural," "cage free" and Nellie's Free Range Eggs and shows that only Nellie's eggs come from "small farms" where the birds are given "room to stretch" and "outdoor access."

10. When comparing the images below, Defendant's practices clearly do not live up to its own interpretation of the term "Free Range" and the Eggs' packaging images.

NELLIE'S ADVERTISEMENT

6



NELLIE'S EGG SUPPLIER



11. As image comparisons show, the conditions in Defendant's henhouses are virtually indistinguishable as those from the example they show as being not "Free Range" where hens are essentially "liv[ing] inside a space much like a large, overcrowded warehouse." Nellie's itself describes this as a "grim existence" for these hens. But contrary to its packaging representations, that is precisely how Nellie's own hens live.

12. Further exacerbating the issue, Defendant's hens can only get outside through small hatches cut at intervals along the sides of the shed. The hatches are

closed all winter and during inclement weather. In pleasant weather the hatches are closed at night and are not opened until 1 pm the next day.

13. Because of this overcrowding and limited time that the hatches are open, many of Defendant's hens are unable to ever access the hatches or the outdoor space Defendant advertises so prominently.

14. A 2016 consumer survey conducted at the University of Bath found that the top reason consumers purchase eggs labeled as "free range" is because "Hens are happier." (See https://purehost.bath.ac.uk/ws/files/158352483/Accepted_Version.pdf)



**Figure 1:** The reasons selected by consumer respondents for buying free-range eggs. Multiple options could be selected.

15. But Nellie's hens are not happier. They live under conditions comparable to those that Defendant itself has labeled as a "grim existence."

16. The disconnect between Nellie's representations about the Eggs and reality is demonstrated by a video where shoppers exiting a Brooklyn, New York Whole Foods supermarket were asked if they had purchased Nellie's Eggs. Shoppers who answered in the affirmative were asked why they chose Nellie's, and their answers included "I do look for 'free range.' I just feel like it's less cruel" and "'Free range' because I care about the animals and how they are treated."

17. The same Nellie's Eggs purchasers were then shown video of the actual conditions on Nellie's farms and asked for their thoughts. Their responses included "Well I think it's really deceptive. That's disgusting what you showed me" "Another big lie" "It's definitely less 'free range' than you think" and "It's awful. That is not what I imagined 'free range' to be."

18. When asked the question "After seeing this, would you buy Nellie's again?" all of the customers in the video answered that they would not.

19. Consumers like Plaintiff pay more for Nellie's Eggs than eggs that do not purport to be Free Range and bear images invoking extension outdoor space. Plaintiff is a purchaser of Nellie's Eggs who asserts claims for fraud, breach of express warranty, and violations the consumer protection laws of the state of Florida, on behalf of herself and all similarly situated purchasers of the Eggs.

## JURISDICTION AND VENUE

20. This Court has jurisdiction over this matter under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2)(A), as the amount in controversy exceeds $5 million, exclusive of interests and costs; it is a class action of over 100 members; and the Plaintiff is a citizen of a state different from at least one Defendant.

21. This Court has personal jurisdiction over Defendant. Defendant has sufficient minimum contacts with the state of Florida and purposefully availed itself, and continues to avail itself, of the jurisdiction of this Florida through the privilege of conducting its business ventures in the state of Florida, thus rendering the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice.

22. Venue is proper in this district under 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district, as Defendant does business throughout this district, and Plaintiff made her purchase of the Nellie's Free Range Eggs in Titusville, Florida from a Publix Supermarket in this district and her purchased Product was delivered to, and used, in this district.

## THE PARTIES

23. Plaintiff Tamara Dean is a natural person and a citizen of Brevard County, Florida, residing in Titusville. Plaintiff purchased the Nellie's Free Range Eggs Product from a local Publix supermarket. Prior to her purchase, Plaintiff saw and reviewed Defendant's advertising claims on the egg carton packaging and labeling

itself, and she made her purchase of the eggs in reliance thereon. Plaintiff specifically relied upon representations made by Defendant that its eggs were 'free range'. Plaintiff did not receive the promised benefits or receive the full value of her purchase.

24. Defendant, Pete and Gerry's Organics, LLC, is an New Hampshire corporation with its principal place of business at Monroe, New Hampshire. Pete and Gerry's is licensed to conduct business in Florida.

25. Plaintiff reserves the right to amend this Complaint to add different or additional defendants, including without limitation any officer, director, employee, supplier, or distributor of Defendant who has knowingly and willfully aided, abetted, or conspired in the false and deceptive conduct alleged herein.

## CLASS ACTION ALLEGATIONS

26. **Class Definition:** Plaintiff brings this class action on behalf of herself, and as a class action on behalf of the following putative class members (the "Class"):

**Florida Class:**

All individual residents of the State of Florida who purchased the Nellie's Free Range Egg Product through the date of class certification. Excluded from the Class are: (1) Defendant and all directors, officers, employees, partners, principals, shareholders, and agents of Defendant; (2) Any currently sitting United States District Court Judge or Justice, and the current spouse and all other persons within the third-degree of consanguinity to such judge/justice; and (3) Class Counsel.

11

27. Plaintiff reserves the right to amend the Class definitions if further investigation and discovery indicates that the Class definitions should be narrowed, expanded, or otherwise modified.

28. **Numerosity and Ascertainability:** Plaintiff does not know the exact number of members of the putative classes. Due to Plaintiff's initial investigation, however, Plaintiff is informed and believes that the total number of Class members is at least in the tens of thousands, and that members of the Class are numerous and geographically dispersed throughout Florida. While the exact number and identities of the Class members are unknown at this time, such information can be ascertained through appropriate investigation and discovery, including Defendant's records, either manually or through computerized searches.

29. **Typicality and Adequacy:** Plaintiff's claims are typical of those of the proposed Class, and Plaintiff will fairly and adequately represent and protect the interests of the proposed Class. Plaintiff does not have any interests that are antagonistic to those of the proposed Class. Plaintiff has retained counsel competent and experienced in the prosecution of this type of litigation.

30. **Commonality:** The questions of law and fact common to the Class members, some of which are set out below, predominate over any questions affecting only individual Class members:

    a. whether Defendant committed the conduct alleged herein;

    b. whether Defendant's conduct constitutes the violations of laws alleged herein;

c. whether Defendant's labeling, sale and advertising set herein are unlawful, untrue, or are misleading, or reasonably likely to deceive;

d. whether the Product are adulterated and/or misbranded under the Florida Health & Safety Code or federal law;

e. whether Defendant knew or should have known that the representations were false or misleading;

f. whether Defendant knowingly concealed or misrepresented material facts for the purpose of inducing consumers into spending money on the eggs;

g. whether Defendant's representations, concealments and non-disclosures concerning the Product are likely to deceive the consumer;

h. whether Defendant's representations, concealments and non-disclosures concerning the Product violate FDUTPA and/or the common law;

i. whether Defendant should be permanently enjoined from making the claims at issue; and

j. whether Plaintiff and the Class are entitled to restitution and damages.

31. **Predominance and Superiority:** Common questions, some of which are set out above, predominate over any questions affecting only individual Class members. A class action is the superior method for the fair and just adjudication of this controversy. The expense and burden of individual suits makes it impossible and impracticable for members of the proposed Class to prosecute their claims individually and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents

a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues. A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

a. given the complexity of issues involved in this action and the expense of litigating the claims, few, if any, Class members could afford to seek legal redress individually for the wrongs that Defendant committed against them, and absent Class members have no substantial interest in individually controlling the prosecution of individual actions;

b. when Defendant's liability has been adjudicated, claims of all Class members can be determined by the Court;

c. this action will cause an orderly and expeditious administration of the Class claims and foster economies of time, effort and expense, and ensure uniformity of decisions; and

d. without a class action, many Class members would continue to suffer injury, and Defendant's violations of law will continue without redress while Defendant continues to reap and retain the substantial proceeds of their wrongful conduct.

32. **Manageability:** The trial and litigation of Plaintiff's and the proposed Class claims are manageable. Defendant has acted and refused to act on grounds generally applicable to the Class, making appropriate final injunctive relief and declaratory relief with respect to the Class as a whole.

## COUNT I

### For Violations of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. 501.201 et seq.

33. Plaintiff realleges and incorporates by reference each of the allegations contained in the paragraphs above as if fully set forth herein.

34. Plaintiff brings this claim on her own behalf and on behalf of each member of the Florida Class.

35. Defendant violated and continues to violate Florida's Deceptive and Unfair Trade Practices Act by engaging in unfair methods of competition, unconscionable acts and practices, and unfair and deceptive acts and practices in the conduct of their business.

36. The material misstatements and omissions alleged herein constitute deceptive and unfair trade practices, in that they were intended to and did deceive Plaintiff and the general public into believing that Defendant's "Free Range" eggs were from hens raised in humane living conditions.

37. Plaintiff and Class members relied upon these advertisements in deciding to purchase the Product. Plaintiff's reliance was reasonable because of Defendant's reputation as a reliable company.

38. Had Plaintiff known that the Product was not as advertised, she would not have purchased the eggs. As a result of Defendant's deceptive and unfair acts, Plaintiff and Class members have been damaged.

39. Defendant's conduct offends established public policy, and is immoral, unethical, oppressive, and unscrupulous to consumers.

40. Plaintiff and Class members are entitled to damages in an amount to be proven at trial.

41. Defendant should also be ordered to cease its deceptive advertising and should be made to engage in a corrective advertising campaign to inform consumers that its "Free Range" eggs are not from hens raised in more humane living conditions.

## COUNT II

### For False and Misleading Advertising, Fla. Stat. § 817.41

42. Plaintiff re-alleges and incorporates by reference the allegations of in the above-referenced paragraphs 1-19 of the Complaint as if fully set forth herein.

43. Plaintiff brings this claim on her own behalf and on behalf of each member of the Florida Class.

44. On their website, in print advertisements, and in other forms of advertisements, Defendant made numerous misrepresentations of material fact regarding the quality of its Egg Product.

45. Defendant knew that these statements were false.

46. Defendant intended for consumers to rely on its false statements for the purpose of selling its Product.

47. Plaintiff and Class members did in fact rely upon these statements. Reliance was reasonable and justified because of Defendant's reputation as a reliable company.

48. As a result of Defendant's misrepresentations, Plaintiff and Class members suffered damages in the amount paid for Nellie's Free Range Eggs.

49. Plaintiff and Class members are entitled to damages and injunctive relief as set forth above.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays this Court:

a. Certify this action as a class action;

b. Award compensatory, statutory, and punitive damages as to all Counts where such relief is permitted by law;

c. Enjoin Defendant's conduct and order Defendant to engage in a corrective advertising and labeling/disclosure campaign;

d. Award equitable monetary relief, including restitution;

e. Award pre-judgment and post-judgment interest at the legal rate;

f. Award Plaintiff and Class members the costs of this action, including reasonable attorneys' fees and expenses; and

g. Award such other and further legal and equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

DATED: April 27, 2022

    s/William C. Wright
WILLIAM WRIGHT
The Wright Law Office, P.A.
FL BAR NO. 138861
515 N. Flagler Drive
Suite P-300
West Palm Beach, FL 33410
Telephone: (561) 514-0904
willwright@wrightlawoffice.com

DANIEL FAHERTY
Telfer, Faherty, & Anderson, PL
FL BAR NO. 379697
815 S. Washington Avenue
Suite 201
Titusville, FL 32780
Telephone: (321) 269-6833
danfaherty@hotmail.com
cguntner@ctrfa.com