UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

_____

|                                                      |   |                              |
|------------------------------------------------------|---|------------------------------|
| TAMARA DEAN, individually and on                     | ) |                              |
| behalf of all others similarly situated,             | ) |                              |
|                                                      | ) | Case No 6:22-cv-00806-CEM-EJK |
|                                      Plaintiff,      | ) |                              |
|                                                      | ) |                              |
| v.                                                   | ) |                              |
|                                                      | ) |                              |
| PETE AND GERRY'S ORGANICS, LLC,                      | ) |                              |
|                                                      | ) |                              |
|                                      Defendant.      | ) |                              |

_____)

## DEFENDANT PETE & GERRY'S ORGANICS, LLC'S
## MOTION TO DISMISS

Pursuant to Rule 12 of the Federal Rules of Civil Procedure, Defendant Pete and Gerry's Organics, LLC ("**Defendant**") moves for dismissal of the complaint filed against it by Tamara Dean in the above-captioned action because the complaint fails to state a claim as a matter of law and fails to meet the particularity requirements of Federal Rule of Civil Procedure 9(b).  In support, Defendant states the following:

## INTRODUCTION

This copycat complaint is a word-for-word replication—typos and all—of allegations previously made in a putative class action against Defendant Pete and Gerry's Organics, LLC ("PGO") in the Southern District of New York, itself a

copycat of dismissed claims made by consumers regarding the advertising and labeling of Nellie's Free Range Eggs ("Nellie's").[1]  As a result, it contains several of the same flaws of those complaints, including a lack of specificity that fails to meet the necessary pleading standard for fraud.  Because it is impossible to know from the face of the Complaint the information necessary to establish fraud claims, they must be dismissed.  Yet even beyond the Complaint's lack of specificity, the claims must be dismissed because they seek to describe statements as false or misleading that are protected under either the doctrine of puffery or a statutory safe harbor.

## FACTUAL BACKGROUND

Plaintiff Tamara Dean is a resident of Brevard County, Florida, who allegedly purchased Nellie's eggs "in Titusville, Florida from a Publix Supermarket."  Compl. ¶ 22.  Her complaint does not make clear when or even at what location she purchased the eggs, as there are multiple Publix supermarkets in Titusville.  Plaintiff claims to have "reviewed Defendant's advertising claims on the egg carton and labeling itself" and "relied upon these advertisements in deciding to purchase the Product."  *Id.*  ¶¶ 23, 37.  She provides images of two

---

[1] *See* Compl., *Mogull v. Pete & Gerry's Organics, LLC*, Case No. 7:21-cv-03521 (Apr. 21, 2021).  In that case, the plaintiff eventually amended her complaint and the court ruled upon an amended complaint that alleged different facts and causes of action from those copied here.  *See Mogull v. Pete & Gerry's Organics, LLC*, No. 21 CV 3521 (VB), 2022 WL 602971 (S.D.N.Y. Feb. 28, 2022).

different Nellie's labels, which include the statement: "Most hens don't have it as good as Nellie's . . . . Nellie's small family farms are all Certified Human[e] Free-Range. Our hens can peck, perch, and play on plenty of green grass." *Id.* ¶ 2. One label also includes the statement that the eggs come from "Outdoor Forage, 100% Vegetarian Feed" hens. *Id.* ¶ 3. While Plaintiff's Complaint makes reference to PGO's website, print advertisements, and "other forms of advertisements," she does not allege that she viewed any of those statements (other than the labels described above) before making her purchases of Nellie's eggs. *Id.* ¶ 44.

Plaintiff alleges that hens at PGO's family farms are "crammed into sheds up to 20,000 at a time, preventing them from extending their wings, foraging or making their way to the outdoor space as Defendant advertises so prominently." *Id.* ¶ 5. In support of her argument that Nellie's "Free Range" label is misleading, Plaintiff cites a 2016 consumer survey from the United Kingdom that purportedly shows that "the top reason consumers purchase eggs labeled as 'free range' is because 'Hens are happier.'" *Id.* ¶ 14.

Plaintiff claims that PGO's statements "were intended to and did deceive Plaintiff and the general public into believing that Defendant's 'Free Range' eggs were from hens raised in humane living conditions," and that had she known that "the Product was not as advertised, she would not have purchased the eggs." *Id.* ¶¶ 36, 38. Plaintiff asserts claims against PGO under Florida's Deceptive and

3

Unfair Trade Practices Act ("FDUTPA") (Fla. Stat. § 501.201) and under Florida's misleading advertisement prohibition (Fla. Stat. § 817.41).

## ARGUMENT

Plaintiff's claims fail at the outset because her Complaint does not identify any statements on the Nellie's packaging that are not true.  Whether the alleged wrong committed is framed as a deceptive act or practice under Fla. Stat. § 501.201 (Count I) or misleading advertising under Fla. Stat. § 817.41 (Count II), in order for Plaintiff to prevail, she must—at a minimum—identify a statement that is false or deceptive.  On the face of the Complaint, however, the challenged statements are accurate; Plaintiff does not allege any indication that the statements on the Nellie's packaging were false.  Indeed, Nellie's labelling comports with federal labelling requirements in similar industries.  But even to the extent that Plaintiff argues about the interpretation of Nellie's accurate statements, the challenged statements can be understood to be nonactionable puffery, because a reasonable consumer would not understand them to be making objective factual claims about Nellie's hens that could be proven true or false.

In evaluating a motion to dismiss, courts "'eliminate any allegations in the complaint that are merely legal conclusions' . . . [,] assume the veracity of well-pleaded factual allegations and 'then determine whether they plausibly give rise to an entitlement to relief.'"  *Newbauer v. Carnival Corp.*, 26 F.4th 931, 934–35 (11th

Cir. 2022) (citation omitted).  The allegations contained in the Complaint fail to demonstrate an entitlement to relief and accordingly must be dismissed.

## A. __The Complaint fails to state a claim__

Plaintiff brings two claims: one for a violation of FDUTPA and a second for misleading advertising.  Because a plaintiff who states a claim under § 817.41 will also state a *per se* violation of FDUTPA[2] and because the standard of demonstrating an independent deceptive practice under FDUTPA is higher,[3] the success or failure of the Complaint's claims centers on the misleading advertising claim.  Because Plaintiff's claims both suffer from a number of flaws, they must be dismissed.

### 1. *The statements selected by Plaintiff are true.*

The most straightforward defense against Plaintiff's claims of misleading advertising and deceptive practice is that Nellie's statements are true.  *See Piescik v. CVS Pharmacy, Inc.*, No. 21-81298-CV, 2021 WL 5996977, at *5 (S.D. Fla. Dec. 15, 2021) ("The presence of true information or a disclaimer can rebut a claim of deception."); *Kramer v. Unitas*, 831 F.2d 994, 999 n.12 (11th Cir. 1987) ("[T]o recover under [§ 817.41], plaintiffs must establish all the elements of common-law tort fraud," which include "a false representation of material fact." (citation omitted)).

---

[2] *See Cross v. Point & Pay, LLC*, 274 F. Supp. 3d 1289, 1297 (M.D. Fla. 2017).

[3] Under FDUTPA, "deception must be 'probable, not possible,' and must be likely to cause injury to a reasonably relying consumer." *Jackson v. Anheuser-Busch InBev SA/NV, LLC*, No. 20-CV-23392, 2021 WL 3666312, at *11 (S.D. Fla. Aug. 18, 2021) (citation omitted).

5

The challenged paragraph on the labels states that "Most hens don't have it as good as Nellie's." Compl. ¶ 2. As the paragraph goes on to explain, "9 out of 10 hens in the U.S. are kept in tiny cages" and that even cage-free hens "are crowded into large, stacked cages . . . [and] never see the sun." *Id.* The label contrasts those hens with Nellie's hens, which are "Certified Human[e] Free Range" and "can peck, perch, and play on plenty of green grass." *Id.*

In arguing that these statements are false, Plaintiff admits that "Defendant's hens can . . . get outside through small hatches cut at intervals along the sides of the shed," and that the hatches are open in pleasant weather from 1 p.m. until nightfall. *Id.* ¶ 12. Plaintiff does not claim that Nellie's hens "are kept in tiny cages" or "never see the sun" like the hens against which Nellie's hens are contrasted. Nor does she dispute the claim that "9 out of 10 hens in the U.S. are kept in tiny cages." Therefore, the phrase "[m]ost hens don't have it as good as Nellie's" merely truthfully indicates that Nellie's hens have it better than ninety percent of hens, which spend their lives in tiny cages. Nothing in the Complaint indicates that the conditions at Nellie's farms are the same as or worse than those of caged hens.

Plaintiff instead turns to "how consumers interpret [PGO's] claim that the Eggs are 'free range.'" *Id.* ¶ 7. In support, she makes reference (without citation) to a YouTube video produced by PETA showing reactions of select shoppers to a

video of hens purportedly at one of Nellie's egg suppliers.[4]  But Plaintiff does not dispute that Nellie's hens are "Certified Humane Free Range."[5]  As explained on the Nellie's website[6] under "What Does Free Range Mean?," "our partner farms follow[] the Humane Farm Animal Care (HFAC) Certified Humane Free Range standards."[7]  Those standards require specific amounts and types of outdoor access to become and remain certified.[8]  The qualification of the term "free range" with the term "Certified Humane" and invitation to a definition of the term provided a more specific meaning to the label.  *See, e.g., Piescik v. CVS Pharmacy, Inc.*, No. 21-81298-CV, 2021 WL 5996977, at *5 (S.D. Fla. Dec. 15, 2021) (holding that an asterisk on a hand sanitizer's claim to "kill[] 99.99% of germs" qualified the

---

[4] While Plaintiff does not provide a citation to the video, it is clearly the same video discussed by and cited in the *Mogull* complaint, as the paragraphs are word-for-word the same.  *See* Compl. ¶¶ 16–17, *Mogull*, Case No. 7:21-cv-03521 (Apr. 21, 2021).

[5] "Certified Humane" is a registered trademark of Humane Farm Animal Care, a not-for-profit organization, with the U.S. Patent and Trademark Office, Serial No. 78645262.  The Certified Humane mark is a certification mark. *See* 15 U.S.C. § 1054.

[6] A document incorporated by reference in a complaint may be considered as part of a motion to dismiss "if the attached document is: (1) central to the plaintiff's claim; and (2) undisputed." *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002).  Here, not only does Plaintiff make reference to PGO's website for context on what "free range" means, Compl. ¶ 7, but the label makes explicit reference to PGO's website for an explanation of how to interpret the term, *see id.* ¶ 2 ("WE'RE PROUD TO BE 100% CERTIFIED FREE RANGE.   LEARN WHAT THAT MEANS AT NELLIESFREERANGE.COM.").

[7] *FAQs*, Nellie's Free Range (2021), https://www.nelliesfreerange.com/about-us/faqs.  The page provides a reference to the Certified Humane Free Range standards.

[8] *Range Requirements*, Certified Humane (2022), https://certifiedhumane.org/range-requirements.

definition to make clear to consumers that it meant "many common harmful germs and bacteria," rather than all germs).

Even without the qualifying "Certified Humane" prefix, Nellie's eggs are still "free range" and "outdoor forage."   Under the official guidelines of the USDA's Food Safety and Inspection Service ("FSIS") for labeling poultry — eggs themselves are unregulated — hens may be labelled as "free range" if "the poultry has been allowed access to the outside."[9]   Plaintiff concedes that Nellie's hens are allowed access outside, *see* Compl. ¶ 12; she simply disagrees with how much access is required, *see id.* ¶ 4 ("These representations led Plaintiff . . . to understand that Defendant's hens . . . have more access to the outdoors.").   But the fact "[t]hat Plaintiff and PETA believe that Defendant should use a different method of measuring . . . does not plausibly suggest that what Defendant in fact says is materially misleading."   *Dwyer v. Allbirds, Inc.*, No. 21-CV-5238 (CS), 2022 WL 1136799, at *5 (S.D.N.Y. Apr. 18, 2022) (holding that calculation of carbon footprint under one methodology was not misleading although plaintiff believed another more accurately reflected carbon footprint).   Nellie's hens are "free range" under FSIS guidelines, under Certified Humane standards, and by the metric on PGO's website to which consumers are directed.   The hens are permitted to go outdoors to forage.   That Plaintiff has her own subjective understanding of "free range" or

---

[9] *Meat and Poultry Labeling Terms*, FSIS-GD-2015-0025 (Aug. 10, 2015).

8

"outdoor forage" does not make it reasonable, nor does it make PGO's statement false.  *Cf. Jackson v. Anheuser-Busch InBev SA/NV, LLC*, No. 20-CV-23392, 2021 WL 3666312, at *15 (S.D. Fla. Aug. 18, 2021) (holding that label of "craft brewer" was not deceptive because "what a certain individual might determine to qualify as 'craft' beer is necessarily a subjective one, depending on the individual's tastes and interests").  Because PGO's description of Nellie's hens as "free range" and "outdoor forage" is not a false representation, Plaintiff's claims must fail.

2.      *At best, the statements are nonactionable puffery.*

To the extent that this Court cannot resolve the statements on the basis that they are not false representations, it should rule that they are nonactionable puffery because a reasonable consumer would not take these words as making provable, factual claims about the actual lives of Nellie's hens.

Puffery "comprises generalized, vague, nonquantifiable statements of corporate optimism."  *Carvelli v. Ocwen Fin. Corp.*, 934 F.3d 1307, 1318 (11th Cir. 2019).  The puffery doctrine "presumes a relatively (but realistically) savvy consumer—the general idea being that some statements are just too boosterish to justify reasonable reliance."  *Id.*  As a result, puffery "cannot constitute a misrepresentation of material fact."  *Baker v. Brunswick Corp.*, No. 217CV572FTM99MRM, 2018 WL 1947433, at *7 (M.D. Fla. Apr. 25, 2018) (citing *Wasser v. Sassoni*, 652 So. 2d 411 (Fla. 3d DCA 1995)).  Puffery is "prevalen[t] . . . in

the egg retail market." *In re Processed Egg Prod. Antitrust Litig.*, 312 F.R.D. 124, 139 n.11 (E.D. Pa. 2015); *see also id.* 139–140 nn.11–12 (explaining that "[s]ignificant 'puffery' on egg cartons reduces the utility of relying on marketing for a distinction" and that "many egg marketers add 'puffery' to their egg cartons to attempt to distinguish their eggs from their competitors").

The claim that "[m]ost hens don't have it as good as Nellie's" is a claim that Nellie's hens have it *better* than other hens.  Courts have held that generalized claims about something being better than something else are subjective claims that cannot be proven true or false, and therefore constitute puffery.  *See, e.g., Univ. of Fla. Rsch. Found., Inc. v. Orthovita, Inc.*, No. 1:96-CV-82-MMP, 1998 WL 34007129, at *27 (N.D. Fla. Apr. 20, 1998) ("[U]nless a claim that a product is 'better' than a competitor's is 'backed-up' with false allegations that 'tests prove' superiority . . . , the superiority claim constitutes no more than unactionable puffery."); *Dwyer*, 2022 WL 1136799, at *8 (phrases that animals had "better lives," were "raised right," or lived "the Good Life" were puffery).

Moreover, the statement that Nellie's "hens can peck, perch, and play on plenty of green grass" is also, at a minimum, mere puffery.  Plaintiff's Complaint says nothing about what Nellie's hens can do when they are outside or the amount of green grass upon which they play.  As a result, "[t]here are no allegations anywhere that the quoted language of the advertisements is false.  Read as a

whole, they amount at most to puffery, not fraud." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1292 (11th Cir. 2010).  Furthermore, phrases that use terms like "plenty" are understood as generic, immeasurable references that are not able to be relied upon by consumers. *See Magruder v. Halliburton Co.*, 359 F. Supp. 3d 452, 461 (N.D. Tex. 2018) (holding defendant's statement that it "has 'plenty of' . . . liquidity" was inactionable puffery).

A similar claim about food-producing animals was found to be nonactionable puffery in *Myers-Taylor v. Ornau Foods North America, Inc.*, 18-CIV-1538, 2019 WL 424703 (S.D. Cal. Feb. 4, 2019).  The defendant in *Myers-Taylor* marketed butter as having been made with "Milk From Grass-Fed Cows."  *Id.* at *1.  In granting the defendant's motion to dismiss, the court first held that the statement "Milk From Grass-Fed Cows" would not have led a reasonable consumer to believe that the cows in question were 100% grass-fed.  *See id.* at *4. Likewise, the statements here would not have led a reasonable consumer to believe that *all* of Nellie's hens peck, perch, and play on plenty of green grass or forage outdoors *at all times*.

If the Court is not prepared to rule that Defendant's statement that Nellie's hens were "free range" is plainly true (as described *supra*), it should rule that the statement is puffery, as it is too vague to constitute an actionable misrepresentation.  As discussed above, the USDA's FSIS considers hens to be

"free range" so long as they are permitted access outdoors; Certified Humane Free Range requires access for hours and certain conditions for the farm. *See supra* Section A.1. The term clearly has a broad range of reasonable interpretations that make it unlikely to induce consumer reliance and thus puffery. *See Pye v. Fifth Generation, Inc.*, No. 4:14CV493-RH/CAS, 2015 WL 5634600, at *2 (N.D. Fla. Sept. 23, 2015) (holding "handmade" was subject to multiple meanings and was "the kind of puffery that cannot support claims of this kind"); *see also TocMail Inc. v. Microsoft Corp.*, No. 20-60416-CIV, 2020 WL 9210739, at *4 (S.D. Fla. Nov. 6, 2020) ("[A] statement that is quantifiable, that makes a claim as to the specific or absolute characteristics of a product, may be an actionable statement of fact while a general, subjective claim about a product is non-actionable puffery.").

Because these statements cannot be deceptive by virtue of their nature, they cannot serve as the source for Plaintiff's misleading advertising claim. As a result, the claim must be dismissed.

      3.    *Plaintiff has not adequately pleaded the essential element of knowledge of falsity.*

Plaintiff's Complaint also lacks an additional essential element of a misleading advertising claim: knowledge of the falsity of the statement. *See, e.g., Gayou v. Celebrity Cruises, Inc.*, No. 11-23359-CIV, 2012 WL 2049431, at *7 (S.D. Fla. June 5, 2012) ("An essential element of a misleading advertising claim is that the representor *knew or should have known* of the falsity of the statements at issue."). As

the Complaint notes, the conditions of which Plaintiff complains are at a "NELLIE'S EGG SUPPLIER," not on PGO's premises.  Compl. ¶ 10.  Plaintiff "fails to allege any facts supporting that [PGO] knew or should have known that the statements in its marketing materials . . . were false.  Nor does [s]he allege any facts supporting that [PGO] knew of any [disputed] condition."  *Gayou v. Celebrity Cruises, Inc.*, No. 11-23359-CIV, 2012 WL 2049431, at *7 (S.D. Fla. June 5, 2012) (dismissing misleading advertising claim).  Failure to plead any facts regarding knowledge of falsity is fatal to a misleading advertising claim.  *See, e.g.*, *Era Organics, Inc. v. Erbaviva, LLC*, No. 8:18-CV-2219-T-30SPF, 2019 WL 13063471, at *1 (M.D. Fla. Mar. 8, 2019) (dismissing § 817.41 counterclaim because "Defendant has not alleged that Plaintiff knew or should have known its statements were false").

Simply put, Plaintiff has an obligation to allege that PGO knew or should have known about the operations taking place at farms and that any hens lacked access to the outdoors.  Because she has not, her misleading advertising claim must be dismissed.

**B. PGO's "free range" statements are protected by FDUTPA's safe harbor**

As discussed above, PGO's statements cannot satisfy the heightened standard for a deceptive practice under FDUTPA because the statements were not deceptive and were not likely to mislead a consumer.  But PGO's statements on "free range" are exempt from FDUTPA.  By its own terms, FDUTPA does not

apply to any "act or practice . . . specifically permitted by federal or state law."  Fla. Stat. § 501.212(1).  Courts have interpreted this provision as creating a safe harbor for statements that are permitted by federal regulations.  *See, e.g.*, *Kuenzig v. Hormel Foods Corp.*, 505 F. App'x 937, 939 (11th Cir. 2013) (holding that "labels compl[ying] with federal regulations" and previously "approved by FSIS" were within FDUTPA safe harbor).  "Whether the safe harbor applies may be decided as a matter of law."  *Casey v. Fla. Coastal Sch. of L., Inc.*, No. 3:14-CV-1229-J-39PDB, 2015 WL 10096084, at *7 (M.D. Fla. Aug. 11, 2015), *report and recommendation adopted*, No. 3:14-CV-01229, 2015 WL 10818746 (M.D. Fla. Sept. 29, 2015).

Here, FSIS has approved the use of the term "free range" to designate hens that "ha[ve] been allowed access to the outside."[10]  Where a federal regulator "has approved the use of the terms," they are "specifically permitted by federal law within the meaning of Florida Statutes § 501.212" and cannot be the source of a FDUTPA claim.  *Pye v. Fifth Generation, Inc.*, No. 4:14CV493-RH/CAS, 2015 WL 5634600, at *4 (N.D. Fla. Sept. 23, 2015); *see also Phelps v. Hormel Foods Corp.*, 244 F. Supp. 3d 1312, 1319 (S.D. Fla. 2017) (where "challenged labels were approved by FSIS," it barred "FDUTPA claims based on the labels themselves and advertisements featuring the approved labels").

---

[10] *Meat and Poultry Labeling Terms*, FSIS-GD-2015-0025 (Aug. 10, 2015).

While FSIS regulates the labelling of *poultry* and not *eggs* with the term "free range," the distinction makes no difference, because the term describes the treatment of the hen, not the quality of the egg. It cannot be permissible in one instance but misleading in the other to describe the same scenario. *See Savalli v. Gerber Prod. Co.*, No. 15-61554-CIV, 2016 WL 5390223, at *4 (S.D. Fla. Sept. 20, 2016) ("Plaintiff contends that labeling expressly permitted by the FDCA and FDA regulation may nonetheless be misleading. The argument is self-defeating."). Federal regulators have approved the term "free range" to describe hens that are allowed access to the outdoors. Plaintiff cannot challenge the statement where she admits that Nellie's hens comply with that label. *See* Compl. ¶ 12 (explaining that hatches are opened to hens in pleasant weather). As a result, Plaintiff's FDUTPA claim is barred with respect to the term "free range" and must be dismissed.

C. **The Complaint fails to plead either claim with sufficient particularity**

Finally, both claims are subject to dismissal because they fail to satisfy the requirements of Fed. R. Civ. P. 9(b). Under Rule 9(b), "[i]n alleging fraud . . . , a party must state with particularity the circumstances constituting fraud." A claim for misleading advertising is subject to Rule 9(b) heightened pleading standards. *See, e.g.*, *Begualg Inv. Mgmt. Inc. v. Four Seasons Hotel Ltd.*, No. 10-22153-CIV, 2011 WL 4434891, at *4 (S.D. Fla. Sept. 23, 2011). Whether a FDUTPA claim is generally subject to Rule 9(b) is an open question in the Eleventh Circuit. *Compare Stires v.*

*Carnival Corp.*, 243 F. Supp. 2d 1313, 1322 (M.D. Fla. 2002), *with Nationwide Mut. Co. v. Ft. Myers Total Rehab Ctr., Inc.*, 657 F. Supp. 2d 1279, 1290 (M.D. Fla. 2009) ("The Court is not convinced that the specificity requirements of FED. R. CIV. P. 9(b) applies to FDUTPA, although it recognizes this view is in the minority in this District."). This Court has indicated that courts have applied the requirements of Rule 9(b) where the FDUTPA claims "sound in fraud." *Allstate Ins. Co. v. Auto Glass Am., LLC*, 418 F. Supp. 3d 1009, 1021 n.12 (M.D. Fla. 2019).

Where, as here, the underlying claim involves misleading advertising, it is clear that the claim sounds in fraud. *See Rollins, Inc. v. Butland*, 951 So. 2d 860, 877 (Fla. Dist. Ct. App. 2006) ("Misleading advertising is a particularized form of fraud."). Courts in the Circuit have accordingly applied Rule 9(b) to both claims where a misleading advertising claim is paired with a FDUTPA claim. *See, e.g., Jackson v. Anheuser-Busch InBev SA/NV, LLC*, No. 20-CV-23392, 2021 WL 3666312, at *8 (S.D. Fla. Aug. 18, 2021); *USA Nutraceuticals Grp., Inc. v. BPI Sports, LLC*, No. 15-CIV-80352, 2016 WL 4254257, at *3 (S.D. Fla. Feb. 16, 2016).

Under Rule 9(b), Plaintiff was required to plead the "who, what, when where, and how" of her claims. *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006). Plaintiff has failed to allege several of these elements. First, with regard to "when," Plaintiff was required to plead "the time . . . of each such statement." *Crawford's Auto Ctr., Inc. v. State Farm Mut. Auto. Ins. Co.*, 945 F.3d

1150, 1159 (11th Cir. 2019) (citation omitted).  Yet there is no indication in the Complaint of what day or even year Plaintiff purchased the eggs.  That failure alone is enough to warrant dismissal of her claims.  *See, e.g.*, *Jackson v. Anheuser-Busch InBev SA/NV*, LLC, No. 20-CV-23392, 2021 WL 3666312, at *13 (S.D. Fla. Aug. 18, 2021) (holding that a "fail[ure] to allege with specificity the time at which" alleged misrepresentations occurred permitted "dismiss[al] on this basis alone").

Additionally, other than the phrase "free range," the Complaint does not make clear exactly which statements Plaintiff believes are misleading and fraudulent.  Instead, the Complaint quotes large sections of the labels and describes them as "deceptive."  But plaintiffs may not simply quote the label and leave defendants to guess what language might be under scrutiny; more is required.  *See Merch. One, Inc. v. TLO, Inc.*, No. 19-CV-23719, 2020 WL 248608, at *6 (S.D. Fla. Jan. 16, 2020) ("[W]hile Plaintiff provides some examples of what it contends constitute fraudulent statements made by Defendants, the Complaint fails to satisfy the requirements of Rule 9(b) because Plaintiff must set forth precisely each statement alleged to be fraudulent.").

Plaintiff does not make clear what statements were deceptive, at what store she purchased the eggs, or even in what year she read the labels and bought the eggs.  "The particularity rule serves an important purpose in fraud actions by alerting defendants to the 'precise misconduct with which they are charged' and

protecting defendants 'against spurious charges of immoral and fraudulent behavior.'"  *United States ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1359 (11th Cir. 2006) (citation omitted).  Rule 9(b) shields PGO from having to guess at the circumstances surrounding the alleged deception, and requires dismissal for failure to plead sufficient particularity.

## CONCLUSION

As set forth in detail above, all of Plaintiff's claims—under any of the legal theories she posits—are implausible because they rely upon statements that are either demonstrably true or non-actionable puffery.  Furthermore, because of the heightened pleading requirements for claims sounding in fraud, the Complaint must be dismissed for its failure to provide specificity regarding the circumstances of the allegedly fraudulent statements.  As a result, the Complaint should be dismissed in its entirety.

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 3.01(G)

I certify that, pursuant to Local Rule 3.01(g), counsel for Defendant conferred telephonically with William Wright, opposing counsel representing Plaintiff.  Plaintiff's counsel does not agree on the resolution of the motion and intends to contest it.

Dated: June 27, 2022          Respectfully submitted,

PRETI, FLAHERTY, BELIVEAU & PACHIOS, CHARTERED, LLP

/s/ Gregory P. Hansel
Gregory P. Hansel (Fla. Bar No. 607101)
One City Center
P.O. Box 9546
Portland, ME, 04112-9546
207.791.3000
ghansel@preti.com

PRETI, FLAHERTY, BELIVEAU & PACHIOS, CHARTERED, PLLP
Nathan R. Fennessy, Esq. (*pro hac vice* motion pending)
Nicholas A. Dube, Esq. (*pro hac vice* motion pending)
P.O. Box 1318
Concord, NH 03302-1318
nfennessy@preti.com
ndube@preti.com
603-410-1500

*Attorneys for Defendant Pete and Gerry's Organics, LLC*

### CERTIFICATE OF SERVICE

I hereby certify that on June 27, 2022, I filed the foregoing with the Court's electronic filing system, which will cause a copy to be served upon all counsel of record.

/s/ Gregory P. Hansel
Gregory P. Hansel (Florida Bar # 607101)

19